Argued and submitted February 4, reversed and remanded for new trial November 27, 1991

## STATE OF OREGON,
*Respondent,*

*v.*

## SHULANDA YVETTE BOOKER,
*Appellant.*

## (DA416354; CA A65188)

820 P2d 1378

Garrett A. Richardson, Portland, argued the cause and filed the brief for appellant.

Diane S. Lefkow, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

JOSEPH, C. J.

---

* Joseph, C. J., *vice* Newman, J., deceased.

**JOSEPH, C. J.**

Defendant appeals her conviction for unlawful possession of a firearm. ORS 166.250. She assigns error to the court's denial of her motion to suppress a gun that the police found in her purse.

The court found or could have found these facts: On February 17, 1990, a Tri-Met bus dispatcher radioed police that a male passenger was waving a gun or threatening passengers. Seven officers responded. They found the bus pulled over at the side of a northeast Portland street. The driver told them that the suspect was seated behind him on the left. The officers entered the bus from the front and rear doors. Officer Seamster told the passengers to remain seated. All remained seated except defendant, who was not the suspect. She got up from a seat in the front and moved toward the rear door, saying "I don't want to have nothing to do with it." Seamster told Officer Jacobellis to stop defendant until the officers could determine what was going on. Jacobellis restrained her outside the rear door of the bus.

Jacobellis testified that, after he stopped defendant, he asked her if he could check her purse. She responded that "I don't have nothing to do with it." He testified that he then "patted her down real quickly" and then "patted down her purse." He then "grabbed her purse and felt that it was really heavy." He testified further that it was an average-size purse and that he did not press on it to determine the shape of anything inside. He then opened it and found a gun.

The court concluded that the stop was valid, because the officers had a reasonable belief, based on defendant's actions, that she was committing a crime and that she was armed. It also concluded that the pat down of her purse was permissible as a frisk of her attire and that the removal of the gun was necessary for the officers' safety and for their ongoing investigation.

Defendant argues that the officers had no authority to order the passengers to remain seated, no authority to stop or frisk defendant and no authority to open or search her purse. We need not address the first two arguments, because we conclude that Jacobellis unlawfully searched the purse.

In *State v. Schellhorn*, 95 Or App 297, 769 P2d 221 (1989), the officer stopped a bicyclist who was clutching a rolled up purse. The officer seized it, noticed that it was "extremely heavy," searched it and discovered methamphetamine. We held that, under the circumstances, the seizure of the purse was a reasonable protective measure, because the officer feared that it could be used as a weapon against him. We said:

> "[O]nce the officer had seized the purse, he no longer had any reason to believe that it still posed an immediate threat to him. The fact that the purse was unusually heavy may have given the officer reason to believe that it contained a weapon. However, the officer had the purse in his possession and, if he believed that it contained a weapon, he could have taken steps to protect himself without opening it. Before the officer could open the purse and inspect its contents, he was required to have probable cause to believe that it contained evidence of a crime and there had to be exigent circumstances to justify not obtaining a search warrant. Thus, the officer's inspection of the purse after seizing it was unlawful." 95 Or App at 301.

Under Article I, section 9, of the Oregon Constitution, the warrantless search of defendant's purse was unlawful. Even if we assume that defendant's behavior gave Jacobellis a reasonable suspicion that she had committed a crime that justified stopping her, ORS 131.615,[1] neither the purse nor anything inside it was a threat to him once he had seized it. *See State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987). Moreover, he had no reason to believe that the purse contained contraband. He only knew that it was heavy. *Compare State v. Anfield*, 100 Or App 692, 696, 788 P2d 480, *rev allowed* 310 Or 133 (1990). Its weight and defendant's refusal to stay seated did not provide probable cause to believe that she had committed a crime.

Reversed and remanded for a new trial.

---

[1] ORS 131.615 provides:

"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry.

"(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion."