Argued and submitted October 31, 2000, reversed and remanded
January 24, 2001

STATE OF OREGON,
*Respondent,*

*v.*

PATRICIA ANN GILKEY,
*Appellant.*

(98CR2114; CA A105583 (Control))

STATE OF OREGON,
*Respondent,*

*v.*

JERALD TODD WHITE,
*Appellant.*

(98CR2116; CA A105644)
(Cases Consolidated)

18 P3d 402

Steven W. Humber, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, State Public Defender.

Holly Ann Vance, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Wollheim, Judge, and Ceniceros, Senior Judge.

HASELTON, P. J.

Wollheim, J., concurring.

## HASELTON, P. J.

Defendants[1] appeal from their respective judgments of conviction and sentences for possession of a controlled substance. ORS 475.992. Defendants assert that the trial court erred in denying their motions to suppress evidence obtained when police seized items from defendant White's person and then, without a warrant, opened and inspected the contents of one of the seized items, an opaque container. We conclude that the seizure of the items from White's person and the retention of those items was justified by officer safety concerns. However, we further conclude that the warrantless search of the opaque container was neither justified by officer safety concerns nor supported by probable cause coupled with exigent circumstances. Accordingly, we reverse and remand.

On August 8, 1998, a citizen informed the Coos Bay Police that several people in a car at the Empire boat ramp in Coos Bay were taking turns drinking from a light bulb. Because light bulbs are commonly associated with methamphetamine use, Officer Craddock responded to the report and ultimately stopped a car that matched the informant's description a few blocks from the boat ramp.

After making the stop, Craddock approached the car and asked the three occupants, including defendants White and Gilkey, for identification. Craddock noticed that the third occupant exhibited signs of being under the influence of drugs, including rapid speech, constricted eyes, a whitish coating on her tongue, and eyelid and body tremors. A records check revealed an outstanding probation violation warrant for Gilkey, and Craddock arrested her pursuant to that warrant.

After arresting Gilkey, Craddock asked all of the occupants to get out of the car so he could conduct a "wingspan" search of the area where Gilkey had been sitting. At some point during the search of the car, Officer Foster, who had arrived as back-up, observed White turn away from the

---

[1] Defendants filed separate notices of appeal. However, on appeal, the state moved to consolidate the two appeals, and we granted that motion.

officers and slowly reach into his left front pants pocket. Foster, frightened that White could be reaching for a weapon, yelled to warn Craddock and then grabbed White's hand. Craddock then removed three objects from White's hand: a pocket knife, a new ChapStick container, and an older ChapStick container with a piece of silver tape on one end. Craddock immediately popped the top off the older Chap-Stick container. Inside, he found a bindle of methamphetamine. White was then arrested for possession of a controlled substance. Ultimately, defendants were charged with possession of a controlled substance in violation of ORS 475.992.

Defendants both filed pretrial motions to suppress, *inter alia*, the methamphetamine found in the old ChapStick container. Those motions each asserted, in part, that the search of the container was unlawful and, consequently, that "the seizure of any and all evidence obtained" as a result of the search, including the methamphetamine and "all oral derivative evidence," must be suppressed.

At the suppression hearing, Foster testified that defendant White's attempt to surreptitiously reach into the front pocket of his pants "frightened" him, because "the guy could have had a gun in there. He could have had a weapon of some kind." In addition, Foster expressed safety concerns regarding the ChapStick container itself: "It's been my experience [that ChapStick containers could hold] knives, razor blades, sticking items such as dirks. Sometimes I've found—I think, on one occasion I found a cuff key or something like that." He also testified that he had previously found controlled substances, including methamphetamine, in ChapStick tubes.

Craddock also testified. He said that he popped the top off of the old ChapStick container and inspected its contents because he "didn't know whether there was contraband or possibly weapons in it." He further testified that he, personally, had never found controlled substances in a ChapStick tube before, and acknowledged that a ChapStick container, like a film canister, could contain legitimate items, such as ChapStick, breath mints, or nothing at all.

The trial court refused to suppress the evidence, holding that officer safety concerns justified seizing the

ChapStick container and that there was probable cause to search its contents:

> "Under the circumstances then existing, defendant's conduct gave rise to the officer's belief that defendant was armed and dangerous, and furthermore, defendant's conduct combined with the officer's experience provided probable cause to open the container for evidence of a crime [*i.e.,* PCS]."

Defendants were convicted following a stipulated facts trial for possession of controlled substance and were each sentenced to 18 months' probation.

On appeal, defendants assign error to the trial court's refusal to suppress the evidence, including the bindle of methamphetamine, found as a result of the warrantless search of the older ChapStick tube. Particularly, defendants argue that that evidence was unlawfully obtained because: (1) the warrantless seizure of the container from White was unlawful; and (2) neither officer safety concerns nor probable cause justified the warrantless opening of the ChapStick tube after it had been seized by the police.[2]

We begin by addressing whether Foster and Craddock lawfully seized the container from White. Defendants assert that the seizure violated their constitutional right to freedom from unreasonable search and seizure[3] and was without justification. We disagree.

Under the analysis set forth by the Supreme Court, the warrantless seizure of the items in defendant White's hand, including the old ChapStick tube, was lawful so long as that seizure was justified by officer safety concerns. *State v.*

---

[2] In its brief on appeal, the state conceded that, under *State v. Tucker*, 330 Or 85, 89, 997 P2d 182 (2000), because the state's "theory of the case was that defendant [Gilkey] held a possessory interest in the ChapStick tube and its contents," Gilkey was entitled to contest the lawfulness of the seizure and search of the ChapStick tube. At oral argument, the state attempted, for the first time, to repudiate that concession and to dispute the trial court's implicit determination in that regard. We reject the state's belated effort to revoke its concession.

[3] Defendants' challenge is based on Article I, section 9, of the Oregon Constitution, which provides, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]".

*Bates*, 304 Or 519, 747 P2d 991 (1987). In particular, an officer is permitted to take

> "reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present." *Id.* at 524.

Defendants argue that, under that standard, the record "does not establish a genuine and reasonable fear justifying the intrusion into and seizure of the contents of White's pockets." The state responds by suggesting that, given the circumstances of the stop, "a reasonable officer could have concluded from defendant's furtive attempt to pull something out of his pocket that he possessed a weapon and that he was attempting to use it." We agree with the state.

As noted, White made a surreptitious and furtive movement, reaching into his pocket during the course of a drug-related stop that had already resulted in the arrest of one of the car's occupants for an outstanding probation violation. That movement did, in fact, "frighten" Foster, because "the guy could have had a gun in there. He could have had a weapon of some kind. * * * I didn't know." Under the totality of those "specific and articulable" circumstances, officer safety concerns fully justified the initial seizure of the items in White's hand. *Bates*, 304 Or at 524.

The officers were similarly justified in retaining the old ChapStick container after Craddock seized it from White. *See State v. Blevins*, 142 Or App 237, 920 P2d 1131 (1996), *rev den* 327 Or 521 (1998). Seizure of a closed container on officer safety grounds is valid only if there exists "reasonable suspicion that the object 'might' contain a weapon." *Id.* at 244. Such reasonable suspicion exists where: (1) the container has the physical capacity to conceal a weapon; and (2) "under the totality of the circumstances, there was a reasonable suspicion that it did contain a weapon." *Id.*

*Blevins* is exemplary. There, we upheld, on officer safety grounds, the seizure of a small (one inch by two inches) cylindrical container, because it could contain a weapon such

as a needle or a razor. We noted that the seizure of the cylindrical container was valid because of the defendant's nervousness and furtive actions and because the officer testified that, "based on his training and experience, persons encountered in traffic stops use small items, such as razor blades or needles, as weapons." *Id.* at 245. We held that the totality of circumstances justified the seizure of the container, and specifically noted:

> "A reasonable suspicion that a container discovered during a pat down contains a weapon does not require certainty that it does. That would require clairvoyance and could not accommodate a reasonable belief that turned out to be wrong. What is involved is a belief that the object felt is capable of containing a weapon and that, based upon the circumstances of the encounter, there is a reasonable likelihood that it does. That is what the officer testified to here; no more is required." *Id.*

The same reasoning controls here. Foster testified that, in his experience as an officer, he had found weapons, including knives, razor blades, and "sticking items such as dirks," inside ChapStick containers. In addition, the circumstances of the stop—and particularly White's furtive attempt to reach into his pocket after Gilkey had been arrested—reasonably reinforced the officer's belief that, in grasping the ChapStick tube, White might well have been attempting to gain access to a weapon. Thus, the officers' continued seizure of the old ChapStick tube was a reasonable and lawful officer safety measure. *Blevins*, 142 Or App at 245.

We proceed, finally, to Craddock's *opening* of the old ChapStick tube without a warrant. The state argues, and the trial court determined, that Craddock's conduct was permissible on either or both of two alternative grounds: (1) officer safety; or (2) probable cause that the opaque container contained controlled substances, coupled with exigent circumstances. We conclude that the trial court erred with respect to both of those asserted grounds. Consequently, the evidence developed from of the warrantless search of the old ChapStick tube must be suppressed.

██ In general, when officers discover a closed container that may contain a weapon, the seizure of the container is

sufficient to protect officer safety—and a warrantless search of the container is, thus, not justified by officer safety concerns. For example, in *State v. Jones*, 103 Or App 316, 797 P2d 385 (1990), we held that the trial court erred in failing to suppress bindles of cocaine recovered from a Sucrets box found during a search incident to the arrest of the defendant. There, the police officer shook the container, thought that it contained a razor blade, and opened it to inspect its contents. In holding that the heroin and cocaine found inside the box should have been suppressed, we noted:

> "Even if the officer was justified in removing the box for his own protection or to prevent defendant from escaping * * *, once it was in his possession, he no longer believed that it posed a threat to him in either respect. If he thought it contained a razor blade that could be used as a weapon or means of escape, he could simply have withheld it from defendant." *Jones*, 103 Or App at 319 (citations omitted).

Similarly, in *State ex rel Juv. Dept. v. Singh*, 151 Or App 223, 949 P2d 303 (1997), we reversed the trial court's refusal to suppress a gun found in the defendant's backpack during a search incident to arrest. There, the police asked the defendant for permission to search his backpack, and the defendant refused. Subsequently, the police patted down the pack, felt an object resembling a handgun, and opened the pack, finding a small automatic handgun. We held that the search of the backpack was unsupported by specific and articulable facts supporting a reasonable belief that the backpack contained weapons or tools of escape because, after the backpack was seized, the defendant had no opportunity to gain access to any weapon or tool of escape from his backpack. *Id.* at 228-29. Consequently, the exigency justifying the seizure of the backpack no longer existed, and the ensuing search was unlawful. *Id.* at 230.

This case differs from *Jones* and *Singh* in at least one material respect: Here, White was not under arrest when the closed container was seized from his person. In its brief, the state suggests, at least implicitly, that that circumstantial distinction justified Craddock's opening of the ChapStick tube: "From the officer's perspective, he would have been placing himself and his fellow officer at risk had he returned the tube to defendant without first inspecting its contents."

That "it would have been unsafe to give it back without checking it" argument is unavailing. Even if Craddock (or Foster) might ultimately have been faced with a choice at the conclusion of the stop of whether to continue to retain the ChapStick tube or to return it to White, it is uncontroverted that the stop was ongoing when Craddock opened the container. With the container in hand and the stop ongoing, there was no *immediate* threat of serious physical injury to the officer or to others then present." *Bates*, 304 Or at 524 (emphasis added). *See Singh*, 151 Or App at 229-30; *State v. Meyer*, 120 Or App 319, 331, 852 P2d 878 (1993) ("Any threat that the box might have posed and, accordingly, any authority to act for officer safety, dissipated as soon as the box was in the control of the police.").[4]

*State v. Schellhorn*, 95 Or App 297, 769 P2d 221 (1989), is illustrative. In *Schellhorn*, a police officer encountered the defendant riding a bicycle without a light on a public street at 1:14 a.m. The officer observed that the defendant was wearing dark clothing and tennis shoes, and appeared to be carrying a rolled up purse in his left hand. Suspecting that the defendant might be a burglar, the officer stopped the defendant and immediately grabbed the purse from the defendant's hands "because he feared that the purse could have been used as a weapon against him." *Id*. at 299.

After seizing the purse, the officer noticed that it was very heavy. Fearing that it could contain a weapon, he opened the purse. Inside, he found $40 in change and, upon closer inspection, a bag of methamphetamine in a zipped pouch on the side of the purse. The officer then arrested the defendant for possession of a controlled substance. *Schellhorn*, 95 Or App at 299-300.

At trial, the trial court admitted the evidence found during the search of the purse, concluding that it was admissible as evidence found during a lawful stop, frisk, and

---

[4] *See also State v. Barnum*, 136 Or App 167, 174-75, 902 P2d 95 (1995), *rev den* 323 Or 336 (1996) (although loss or destruction of evidence concerns justified the seizure of the defendant's notebook, "they did not justify the warrantless invasion of [the] defendant's *privacy* interest in it. Once the police had the notebook in their possession, the officers no longer had reason to fear that the contents would be lost or destroyed; the exigency had expired").

search. We reversed, holding that, while officer safety concerns justified the seizure of the purse, the ensuing search of the purse was unlawful. We explained:

> "[O]nce the officer had seized the purse, he no longer had any reason to believe that it still posed an immediate threat to him. The fact that the purse was unusually heavy may have given the officer reason to believe that it contained a weapon. However, the officer had the purse in his possession and, if he believed that it contained a weapon, he could have taken steps to protect himself without opening it. *Before the officer could open the purse and inspect its contents, he was required to have probable cause to believe that it contained evidence of a crime and there had to be exigent circumstances to justify not obtaining a search warrant.* Neither of those conditions existed. Thus, the officer's inspection of the contents of the purse after seizing it was unlawful." *Schellhorn*, 95 Or App at 301.

The same reasoning applies here. *Schellhorn* involved a noncustodial, warrantless search of an already-seized container. Here, as with the defendant in *Schellhorn*, White was not under arrest at the time Craddock conducted the warrantless search of the ChapStick tube, and Craddock, having seized the tube from White, "could have taken steps to protect himself without opening it." *Schellhorn*, 95 Or App at 301; *see also State v. Booker*, 110 Or App 6, 9, 820 P2d 1378 (1991) ("neither the purse nor anything inside it was a threat * * * once [the officer] had seized it"). In short, at the time Craddock opened the opaque container, no immediate officer safety concern justified that warrantless intrusion.

The state argues, finally, that the warrantless search of the ChapStick tube was justified by probable cause that it contained controlled substances coupled with exigent circumstances.[5] As support for that position, the state invokes—as

---

[5] The state does not contend, and the trial court did not find, that the old ChapStick tube "announced" that it contained controlled substances. *See, e.g., State v. Owens*, 302 Or 196, 206, 729 P2d 524 (1986) (the contents of opaque containers that "announce" their contents "are visible virtually to the same extent as if the contents had been discovered in 'plain view,' outside the confines of any container"). *Accord State v. Kruchek*, 156 Or App 617, 622, 969 P2d 386 (1998), *rev allowed* 328 Or 594 (1999) (container "announces" its contents as contraband only if it is so uniquely associated with drugs that contraband is its sole content).

Nor does the state contend that the search of the tube was somehow permissible as a search incident to arrest under the "anticipatory search" principle applied

did the trial court—*State v. Brenner*, 151 Or App 159, 947 P2d 1139 (1997).

In *Brenner*, the police were investigating a report of a stolen vehicle. An officer approached the defendant, who was working on a pickup with a passenger sitting in the cab. After asking the defendant a few questions, the officer turned to leave and, as he did so, the defendant suddenly put his hand in his jacket pocket and walked to the other side of the pickup, shielding him from the officer's view. The officer became "alarmed" that the defendant might be pulling a weapon. The officer then saw the defendant bring his hand out of his pocket and place and conceal a metal object between the passenger's legs. Upon the officer's command, the passenger produced the object—a metal match container of the sort in which the officer had previously found controlled substances. Based on the defendant's and the passenger's furtive movements, and on his own experience, "there was no doubt in [the officer's] mind that the container contained drugs" (as the officer testified at the suppression hearing). *Id.* at 161. Consequently, the officer opened the container and found methamphetamine. *Id.*

The defendant unsuccessfully sought to suppress the methamphetamine and, following his conviction for unlawful possession of a controlled substance, he assigned error to the trial court's denial of his suppression motion. We affirmed, concluding first that the seizure of the container was justified by officer safety concerns. *Brenner*, 151 Or App at 161-62. We then addressed the opening and search of the container:

> "Defendant also argues that once [the officer] discovered that the object was not a weapon, then the circumstances did not provide probable cause for [the officer] to search the container. Again, we disagree. [The officer]'s experiences with finding controlled substances in similar containers combined with defendant's attempt to dispose of the container furtively provided the requisite probable cause and exigent circumstances to open the container to determine if

in *State v. Anfield*, 313 Or 554, 561, 836 P2d 1337 (1992) (search preceding formal arrest "did not keep search from being *incident* to arrest, so long as there was probable cause for the arrest and the initial search was related to the reason for the arrest"). *See also State v. Chambers*, 147 Or App 626, 632, 938 P2d 793 (1997), *rev den* 327 Or 82 (1998) (same).

it contained evidence of a crime." *Id.* at 162 (citations omitted).[6]

*Brenner* is materially distinguishable. Here, unlike in *Brenner*, the searching officer (Craddock) lacked subjective probable cause to believe that the ChapStick tube contained unlawful controlled substances. *See State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986) (describing subjective probable cause requirement: "The test is not simply what a reasonable officer *could have* believed when he conducted a warrantless search or seizure, but it is what this officer actually believed, based upon the underlying facts of which he was cognizant, together with his own training and experience."). Unlike the officer in *Brenner*, who had "no doubt in his mind that the container contained drugs," Craddock testified that he opened the ChapStick tube "[b]ecause *I didn't know* whether there was contraband or possibly weapons in it." (Emphasis added.) Craddock's uncertainty about the presence of contraband in the ChapStick tube does not rise to the level of subjective probable cause. *State v. Bickford*, 157 Or App 386, 390, 970 P2d 234 (1998), *rev den* 329 Or 589 (2000) ("[I]f the only evidence is that the officer had a 'mere suspicion' or felt there was only a 'possibility' that the offense was committed, the officer lacks subjective probable cause.").

We fully appreciate, as we have repeatedly reiterated, that "magic words" are not required to establish subjective probable cause and that, at least in part, an officer's subjective state can be inferred from the circumstances. *See, e.g., State v. Rutherford*, 160 Or App 343, 347-48, 981 P2d 386, *rev den* 329 Or 447 (1999) (court can, in some instances, infer subjective probable cause from an officer's conduct); *Bickford*, 157 Or App at 390. *See also State v. Belt*, 325 Or 6, 12, 932 P2d 1177 (1997) (allowing inference of subjective probable cause where "no evidence provides a contrary explanation of

---

[6] The nature of the "exigency" excusing the procurement of a warrant in *Brenner* is uncertain. Presumably, if the officer had "no doubt in his mind" that the cylinder contained unlawful controlled substances, he could have arrested the defendant and the passenger based on probable cause of possession of a controlled substance. That arrest would, in turn, have obviated any "exigency" (*viz.*, destruction of the contraband) that might otherwise have arisen had the cylinder been returned to the defendant or the passenger. In all events, given our disposition, we need not resolve that matter in this case.

[the officer's] conduct"). Nevertheless, Craddock's "I didn't know" testimony, particularly when interwoven with officer safety concerns that did not justify the search of the container, *see, e.g.,* 172 Or App at 103-04, fails to satisfy even that standard.[7] *See Bickford,* 157 Or App 386.

Because the warrantless opening and search of the old ChapStick tube was neither justified by officer safety concerns nor supported by probable cause, the search of that container was unlawful. *See, e.g., Schellhorn,* 95 Or App at 301 (warrantless search of purse without probable cause and exigent circumstances not justified by officer safety concerns). Accordingly, the trial court erred in denying defendants' motions to suppress the contents of that container and all evidence, including oral evidence, derived as a result of that unlawful search.

Reversed and remanded.

**WOLLHEIM, J.,** concurring.

I write separately to emphasize the limited nature of the majority's holding. I agree with the majority that the officers were justified in seizing the contents of White's hand, based on officer safety. I also agree with the majority's holding that the warrantless search of the ChapStick container was unlawful because the stop was ongoing. However, we do not decide what an officer should do once the stop ended. In such a situation, an officer may be facing a Catch-22 situation. Assuming that the individual is not arrested and the stop is over, an officer who validly seizes an item based on officer safety is faced with limited choices: if the officer returns the item without first inspecting its contents, then the item could be used as a weapon against the officer. Yet, on the other hand, if the officer keeps the item, it could constitute a warrantless seizure. We do not decide the more difficult question of what an officer should do once a stop ends, because that question is not before us.

---

[7] Craddock, unlike Foster, had no previous experience with finding controlled substances in ChapStick containers. Consequently, such experience was not a part of his "mental mix" for purposes of assessing subjective probable cause.