Argued and submitted February 28, 2003; resubmitted en banc October 27, affirmed December 1, 2004, petition for review denied March 22, 2005 (338 Or 363)

# STATE OF OREGON,
*Respondent,*

*v.*

# EVERETT ERSHELL RUIZ,
aka Everett Ershelleldo,
*Appellant.*

0011-38666; A114493

101 P3d 824

Meredith Allen, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Public Defender, Office of Public Defense Services.

Michael J. Slauson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Brewer, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Schuman and Ortega, Judges, and Deits, Judge pro tempore.

LANDAU, J.

Armstrong, J., dissenting.

## LANDAU, J.

Defendant appeals a conviction for possession of a controlled substance. ORS 475.992(1). He assigns error to the denial of a motion to suppress evidence that was seized from him during what he asserts to have been an unlawful stop. We affirm.

The relevant facts are not in dispute. Portland Police Officer Elaias was on patrol near the bathrooms at Waterfront Park in Portland late in the afternoon in November. The Portland Saturday Market was operating next to the park. Elaias knew from his training and experience that this area had a "bad problem with controlled substances." He saw defendant and another individual sitting together on a wall. Elaias spoke with defendant's companion and noticed that the companion appeared to have something in his mouth. Elaias asked the companion to open his mouth. The companion opened his mouth. The man had a bindle under his tongue containing a white substance that Elaias suspected was cocaine.

Defendant remained seated next to his companion as Elaias looked inside the man's mouth. Elaias called for backup before attempting to remove the bindle. Defendant reached into his pocket. Fearing that defendant was reaching for a weapon, Elaias told defendant to take his hand out of his pocket. Defendant complied. When he took his hand out of his pocket, however, it was covered in a brown substance that Elaias suspected was tar heroin. Elaias then searched defendant and found five bindles of what was later determined to be heroin.

Defendant moved to suppress the drug evidence, arguing that Elaias's order to take his hand out of his pocket constituted an unlawful stop. At the hearing, Elaias testified that he asked defendant to remove his hand from his pocket because he was concerned for his safety, given that defendant could have been reaching for a gun or a knife. The court commented that, under the circumstances, were the court in the officer's shoes observing defendant put his hand in his pocket, "Would I be emphatic, to say the least, about getting the hand out of the pocket? Of course I would. Anybody would

be an idiot not to do so." The trial court, however, did not rule on defendant's motion on officer safety grounds. The court concluded that, because Elaias's command was not a stop in the first place, it did not need to reach the question whether the command was reasonable.

On appeal, defendant contends that Elaias's command was indeed a stop and was not reasonable. The state argues that the trial court correctly determined that the command was not a stop. In the alternative, the state argues that, if the command was a stop, it was reasonably necessary to protect Elaias's safety.

■■ We begin with whether Elaias stopped defendant when he ordered him to take his hand out of his pocket. An officer stops a person if the officer exercises authority over that person in a way that would lead the person reasonably to believe that he or she is not free to leave. *E.g., State v. Johnson*, 105 Or App 587, 590-91, 805 P2d 747 (1991). In this case, a person in defendant's position would not reasonably believe that he could walk away from his encounter with Elaias without first taking his hand from his pocket, as Elaias ordered him to do so. It necessarily follows that Elaias exercised authority over defendant and that the exercise of authority constituted a stop.

■ We turn to whether the stop nevertheless was reasonable in light of Elaias's concerns for his safety. A stop is lawful if the officer making it reasonably suspects that it is necessary to protect the officer's safety. *State v. Bates*, 304 Or 519, 747 P2d 991 (1987), establishes the framework for evaluating whether concern for safety reasonably justifies a stop. Under *Bates*, the state must establish that the officer subjectively suspected that the person the officer stopped posed an immediate threat of serious physical injury to the officer or others present and that the officer's suspicions were objectively reasonable. *Id.* at 524. In this case, Elaias testified— and no one contests—that he feared for his safety when defendant reached into his pocket. Thus, the only issue before us is the objective reasonableness of Elaias's concern.

■ In evaluating the reasonableness of an officer's concern for safety, we examine "the totality of the circumstances as they reasonably appeared to the officer[ ] at the time."

*State v. Jackson*, 190 Or App 194, 199, 78 P3d 584 (2003), *rev den*, 337 Or 182 (2004). In this case, those circumstances included the fact that defendant reached into his pocket during an investigation of defendant's companion for a drug-related offense, in an area known to be a problem area for unlawful drug transactions. Elaias testified that he was concerned that, during the course of a drug-related investigation, defendant was reaching for a gun or a knife.

That the investigation occurred in a high-crime area certainly lends credence to Elaias's concerns. *See Jackson*, 190 Or App at 201 (officer's prior experience with gang activity in the particular area supported officer's concerns for safety). So too does the fact that defendant remained right next to his companion as Elaias investigated. *State v. Miglavs*, 337 Or 1, 14, 90 P3d 607 (2004) ("When [the] defendant remained in that close proximity to the officers, the officers' safety concerns reasonably were heightened because the officers needed to focus their attention on defendant's companion and were not able to watch defendant as closely as they could before that time."). And that defendant's movements occurred during a drug-related investigation reasonably alerted Elaias to the possibility of immediate danger.

In that regard, the circumstances recall those of *State v. Gilkey / White*, 172 Or App 95, 18 P3d 402 (2001). In that case, police pulled over a car matching the description given by an informant who had witnessed passengers in the car engaged in what appeared to be the ingestion of controlled substances. After stopping the vehicle, Officer Craddock asked the three occupants for identification. One of the passengers appeared to be under the influence of drugs, and a record check revealed that another of the passengers, Gilkey, had an outstanding warrant. Craddock arrested Gilkey pursuant to the warrant. *Id.* at 97.

After the arrest, Craddock asked the remaining passengers, including the defendant, to leave the vehicle to allow him to search the passenger compartment. During the course of that search, another officer, Foster, saw the defendant turn from the officers and slowly reach into his left front pants pocket. Foster, concerned that the defendant could be reaching for a weapon, yelled to warn Craddock and grabbed

the defendant's hand. As it turned out, the defendant had been holding onto a pocket knife and two small containers of methamphetamine. *Id.* at 97-98.

We concluded that the warrantless seizure of the contents of the defendant's pockets was justified by officer safety concerns. Defendant's action of reaching into his pocket during the course of a drug-related stop, we held, justifiably frightened Foster, who had testified that the defendant could have been reaching for a gun. *Id.* at 99-100.

We conclude that in this case, under the totality of the circumstances as they reasonably appeared to Elaias, the officer's concern for his safety was reasonable. The trial court therefore did not err in denying defendant's motion to suppress.

Affirmed.

**ARMSTRONG, J.,** dissenting.

I disagree with the majority's conclusion that the record establishes that Elaias had a reasonable concern for his safety when he stopped defendant. I therefore respectfully dissent from its decision to affirm the order that denied defendant's motion to suppress.

Because I understand the record differently from the majority, I restate the facts. Portland Police Officer Elaias was on patrol near the bathrooms at Waterfront Park in Portland at about 4:00 p.m. on November 11, 2000. At that time, the Portland Saturday Market was operating next to the park. Elaias knew from his training and experience that the area had "a bad problem with controlled substances." He saw defendant and another person sitting together on a wall. Elaias spoke with defendant's companion and asked to look in his mouth. The companion opened his mouth and thereby disclosed a "bindle of white substance" under his tongue.

Defendant remained seated on the wall during the encounter. At some point, he put his hand in his pocket. Elaias directed him to take his hand out of his pocket. Elaias testified that he gave that order because he "was afraid [that defendant] might have been reaching for a weapon." That

fear was not based on any particular facts that Elaias identified that led him to believe that defendant had a weapon. It was based, rather, on the fact that Elaias knew that "sometimes people carry weapons, *i.e.* a gun or knife or something like that." Defendant complied with the command. When he took his hand out of his pocket, it was covered in a brown substance that Elaias suspected to be tar heroin. Elaias then searched defendant and found five bindles of what was later determined to be heroin in defendant's left jacket pocket.

Before trial, defendant moved to suppress the drug evidence, arguing that Elaias's order to him to take his hand out of his pocket constituted an unlawful stop. The trial court concluded that the command was not a stop and denied the motion to suppress. Defendant was ultimately convicted of drug possession. Defendant appealed, arguing that the command was a stop and that the stop was not based on a reasonable concern for officer safety.

As the majority notes, *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987), established the test under Article I, section 9, of the Oregon Constitution for the lawfulness of a stop based on a concern for officer safety. The majority fails to note, however, that *Bates* established that an officer's subjectively held fear of a threat of immediate physical injury is not reasonable unless it is based on *particularized* facts that are *articulated* in the record and demonstrate a potential immediate threat of serious physical injury. *State v. Miglavs*, 337 Or 1, 12, 90 P3d 607 (2004). *Miglavs* demonstrates the kind of particularized facts that are sufficient to satisfy that standard. In *Miglavs*, officers conducted a precautionary patdown of the defendant because, based on the following factors, they were concerned that the

"defendant might pose an immediate threat to their safety: (1) defendant was wearing bagg[y] tan pants and a black bagg[y] shirt that had '18th' written on the back of the shirt in large white letters which the officers associated with the attire of 18th Street gang members; (2) the young man with defendant also had a gang-related tattoo consisting of three dots in the shape of a triangle that [an officer] knew meant '[m]i vida loca' or 'my crazy life' in English and his shirt also had the number 18 on it; (3) both defendant and the man

with him were wearing, untucked[,] extremely bagg[y cloth-
ing that] could easily conceal weapons; (4) the officers knew
that 18th Street gang members operated in the vicinity
of the encounter and that they carried guns; (5) Officer
Cockreham personally removed weapons from several 18th
Street gang members and had removed, just previously to
this incident, a gun from an 18th Street gang member; and
(6) neither defendant nor the woman in the car chose to
leave after Brown returned their identification."

*Id.* at 11 (footnote and internal quotation marks omitted;
brackets in original). The court rejected the defendant's argu-
ment that his cooperative attitude and lack of suspicious
behavior made the officers' concern for their safety unreason-
able because, in the totality of the circumstances, those fac-
tors were "not sufficient to dispel the reasonableness of the
officers' particularized suspicion that defendant might have
posed a danger to their safety." *Id.* at 12. The court deter-
mined that the type of clothing the defendant wore, standing
alone, would have been insufficient to create a reasonable
concern for officer safety.

However, the court noted that, because the clothing
identified the defendant as a member of a gang that the offi-
cers knew to carry weapons, and because one of the officers
had recently removed a weapon from another member,

"the officers' safety concerns regarding [the] defendant
were not based on generalized or stereotypical information
about gang behavior but, instead, were sufficiently partic-
ularized, based on specific training about and recent per-
sonal experience with a narrowly identified group, *viz.*,
members of the local gang to which defendant and his male
companion proclaimed their allegiance and which operated
in the area where the officers encountered defendant."

*Id.* at 13. The court also noted that "the contact with [the]
defendant and his two companions occurred at a late hour in
a darkened area in the general vicinity where one of the offi-
cers recently had encountered armed members of the 18th
Street gang"; that the defendant initially refused to answer
the officers' questions about where he lived; and that,
"although [he] was free to move from the immediate area
after his identification was returned to him, he chose to
remain in the area near where the police were conducting an

ongoing investigation." *Id.* at 13-14. It concluded that "the combination of factors that the officers identified were sufficient to give rise to a reasonable and individualized suspicion that defendant *might* have posed a safety threat to them." *Id.* at 14 (emphasis in original).

I turn to whether the record contains particularized facts that made Elaias's concern for his safety reasonable under the totality of the circumstances. Elaias testified that he was "afraid [that defendant] might have been reaching for a weapon." However, Elaias did not testify about any specific and articulable facts that reasonably led him to have that fear. Specifically, Elaias did not identify anything about defendant, his behavior, or the circumstances of their encounter that would give Elaias a reasonable basis to suspect that defendant had a weapon in his pocket that he might use against him. For example, Elaias did not testify about the manner in which defendant placed his hand in his pocket (such as quickly or furtively). He also did not testify about any training or experience that he had had about the incidence of weapons seized from or possessed by people who are associated with others who are engaged in drug activity in the Waterfront Park area or in similar public settings.

From the evidence in the record, all that Elaias knew at the time that he stopped defendant was that defendant and his companion were sitting together on a wall at 4:00 p.m. on a day in mid-November in an area of Waterfront Park in which unlawful drug activity frequently occurred, that Portland's Saturday Market was open and operating nearby, that defendant's companion had complied with Elaias's request to open his mouth and thereby had disclosed the presence of a bindle of what Elaias reasonably believed to be a controlled substance, and that, while still sitting on the wall, defendant had placed his hand in his pocket. Thus, the only fact in the record particularized to defendant that Elaias cited as making him concerned for his safety was that defendant had put his hand into his pocket. Elaias's testimony establishes that he had no particular reason to believe that defendant's pocket contained a weapon. Also noteworthy is the trial court's conclusion that Elaias did not have a reasonable suspicion that defendant possessed illegal drugs before

he stopped him.[1] The state did not appeal from that ruling. Thus, the record indicates that Elaias stopped defendant because he simply was uncomfortable with defendant having his hand in his pocket. On that record, I can conclude only that Elaias's fear for his safety was not a reasonable one.

The majority also posits that the facts of this case are analogous to those in *State v. Gilkey/White*, 172 Or App 95, 18 P3d 402 (2001). In *Gilkey/White*, an officer stopped a car after receiving a tip that the occupants of the car might have recently ingested controlled substances. The car had three occupants, one of whom "exhibited signs of being under the influence of drugs, including rapid speech, constricted eyes, a whitish coating on her tongue, and eyelid and body tremors." *Id.* at 97. A records check also indicated that another occupant had an outstanding warrant for her arrest for a violation. The officer arrested that occupant pursuant to the warrant. After making the arrest, the officer ordered the other two occupants out of the car. By that time, a back-up officer had arrived. The back-up officer saw the defendant "turn away from the officers and slowly reach into his left front pants pocket." *Id.* at 97-98. The two officers subsequently subdued the defendant and found three items in the hand that he had put into his pocket, including a knife and methamphetamine. We concluded that, on those facts, "a reasonable officer could have concluded from defendant's furtive attempt to pull something out of his pocket that he possessed a weapon and that he was attempting to use it." *Id.* at 100 (internal quotation marks omitted). Unlike the defendant in *Gilkey-White*, defendant did not turn away from Elaias in an attempt to hide his actions, did not put his hand in his pocket after his companion had already been arrested, and remained seated throughout his very brief encounter with Elaias. Therefore, the facts of *Gilkey-White* are fundamentally different from those presented here.

---

[1] The court stated:

"I can tell you the thing I have resolved. I have resolved the issue of whether the facts rose to reasonable suspicion. They did not. So there was no reasonable suspicion based on the facts as I articulated them in our last hearing."

In summary, I believe that the information in the record was insufficient to support a conclusion that Elaias reasonably suspected that defendant was reaching for a weapon that he might use against him.

I respectfully dissent.

Brewer, C. J., and Schuman and Ortega, JJ., join in this dissent.