Argued and submitted September 6, 1995, decision of the Court of Appeals affirmed; order of the circuit court reversed, and case remanded to the circuit court August 22, 1996

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## STEVE ELLIS GULLEY,
*Petitioner on Review.*

## (CC 9304-0696; CA A81984; SC S41846)

921 P2d 396

Brian P. Jackson, Albany, argued the cause and filed the petition for petitioner on review.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent on review.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.**

GILLETTE, J.

---

** Unis, J., retired June 30, 1996, and did not participate in this decision.

**GILLETTE, J.**

This is a criminal case involving the level of belief that a probation officer must have to justify the officer's request that a probationer permit the officer to search the probationer's home for evidence of a probation violation. Defendant was convicted of the crime of possession of a controlled substance, ORS 475.992(4), and sentenced to 18 months' probation. Defendant's probation required him to "obey all laws, municipal, county, state and federal" and to "abstain from the use of intoxicants." A special condition of probation required him to

> "[s]ubmit person, residence, vehicle, and property to search by a Probation Officer, having reasonable grounds to believe such search will disclose evidence of a probation violation."

Such a special condition of probation specifically is authorized by ORS 137.540(2)(m) (1991), which provided:

> "In addition to the general conditions [of probation that a person convicted of certain offenses must abide by, in order to be granted probation], the court may impose special conditions of probation for the protection of the public or reformation of the offender, or both, including, but not limited to, that the probationer shall:
>
> "* * * * *
>
> "(m)  Submit person, residence, vehicle and property to search by a probation officer having *reasonable grounds* to believe such search will disclose evidence of a probation violation. This condition may be set when it is reasonably related to the nature of the offense or treatment of the offender."

(Emphasis added.)

Pursuant to that special condition of probation, defendant's probation officer asked to conduct a search of defendant's home for evidence of a probation violation. Defendant at first refused to permit the search but, after being told that he would be arrested for a probation violation if he did not allow the search, he allowed it. The search produced the evidence that led to the charges in the present case.

Before trial, defendant moved to suppress all evidence discovered and seized pursuant to the search of his home, on the ground that there were not "reasonable grounds" to search. The trial court suppressed all the evidence. On the state's appeal, the Court of Appeals reversed. *State v. Gulley*, 131 Or App 242, 243, 884 P2d 580 (1994). We allowed review and now affirm the decision of the Court of Appeals.

The historical facts are not in dispute. Sweet Home Police Detective Dominy received a tip on April 2, 1993, from an informant, whose reliability is not shown in the record, that defendant was selling drugs from his home. The informant said that he had seen drugs in defendant's home on several occasions during the previous year and had purchased drugs from defendant within the last two to three weeks before the informant had spoken to Dominy. Dominy also contemporaneously received an anonymous call from a person who reported seeing guns carried into and out of defendant's house, with more being carried in than coming out.

Dominy told Brennan, defendant's probation officer, about what Dominy had been told. Brennan knew that defendant had tested positive for marijuana use on July 27, 1992, and August 10, 1992, and for both marijuana and methamphetamine use on September 1, 1992, January 26, 1993, and March 22, 1993. Brennan also knew that defendant had admitted to his former probation officer that he had smoked marijuana on December 8, 1992. As noted, defendant's probation arose out of a previous drug conviction. Brennan did not question Dominy about the informant's reliability, because he "considered the information reliable coming from Detective Dominy."

Brennan decided to search defendant's home for evidence of a probation violation. On April 15, 1993, Brennan and three police officers went to defendant's home.[1] As already stated, defendant initially refused to consent to the search, but later permitted it when Brennan told him that he would be arrested unless he consented. The ensuing search yielded methamphetamine and a pistol.

---

[1] Defendant does not question the right of the police officers to accompany Brennan or, assuming that Brennan was entitled to enter defendant's house, the right of those officers to enter also and to take part in the ensuing search.

Defendant was indicted for possession of methamphetamine.[2] Before trial, he moved to suppress the evidence seized from his house. The trial court ruled that the evidence should be suppressed. The court stated:

"I find the probation officer and the police officer's testimony credible and find that after being warned of the consequences of refusal the defendant consented to the search. However, I do not find the consent valid where it was based on a request to search under conditions of probation because the officer did not have reasonable grounds to search. Reasonable grounds must be articulated in an objective way. The report of any informant without any basis to evaluate the reliability of the informant or the credibility of his statements is insufficient."

The state appealed the trial court's suppression order.

The Court of Appeals reversed, holding that the trial court erred in determining that the probation officer lacked reasonable grounds to search defendant's home. *Gulley*, 131 Or App at 246-47. In attempting to identify the requisite degree of certainty necessary to meet the "reasonable grounds" standard expressed in defendant's probation order, the court selected and applied the "reasonable suspicion" standard that is applied to stops, which is that

" 'a police officer is able to point to specific and articulable facts that give rise to a reasonable inference that a person has committed a crime.' "

*Id.* at 246 (quoting *State v. Ehly*, 317 Or 66, 80, 854 P2d 421 (1993)). The court concluded that the probation officer's knowledge that defendant repeatedly had failed urinalysis tests during the last several months (and, most recently within the last three weeks) were specific and articulable facts supporting a reasonable inference that defendant had possessed and used drugs in violation of his probation. *Gulley*, 131 Or App at 246. We allowed defendant's petition for review.

■ On review, defendant argues that knowledge of sporadic use of controlled substances obtained by urinalysis did

---

[2] Defendant also was charged in connection with the pistol, but that charge was dismissed and is not before us.

not give his probation officer "reasonable grounds" to believe that a search of defendant's home would yield evidence of a probation violation. Defendant also argues that a statement from an unnamed informant "alone" cannot constitute reasonable grounds to search.

As noted, ORS 137.540(2)(m) (1991) requires that a probationer "[s]ubmit person, residence, vehicle and property to search by a probation officer having *reasonable grounds* to believe such search will disclose evidence of a probation violation." (Emphasis added.) As illustrated by this case, the operation of the statutory section does not literally authorize a search, even in the face of opposition from the probationer. Rather, by requiring that a probationer "submit," the statute leaves in the hands of the probationer the power to resist a search that the probation officer may wish to make, but that resistance has a price: The probation officer can then either "write up" or arrest the probationer for failing to abide by that condition of the probation, thereby subjecting the probationer to potential probation revocation and loss of liberty. Because the probation officer must have "reasonable grounds" to believe that the search that the probation officer wishes to conduct will produce evidence of a probation violation, the probationer, in refusing, hazards his or her fortune on whether a trial court will, after the fact, determine that the knowledge that the probation officer had that led to the request to search rose to the level of "reasonable grounds."[3] The issue under this statutorily authorized condition of probation thus becomes: How much information is needed to amount to "reasonable grounds"? That issue is one of statutory construction.

Having laid the groundwork for an exercise in statutory construction, however, we must immediately note that, strictly speaking, the probation officer in this case did not act

---

[3] Indeed, this case is a slight variant on the scenario seemingly contemplated by the statute. Here, the probationer (defendant) at first refused to permit the search but, when told by his probation officer that he would be arrested for probation violation if he continued to refuse, acquiesced in the search. Defendant's premise here is that the threat of arrest was permissible (and the search in which defendant acquiesced valid) only if the probation officer had the requisite level of knowledge—"reasonable grounds"—at the time that he made his demand of defendant.

directly pursuant to the statute. Instead, he acted pursuant to an administrative rule that had been promulgated by the Department of Corrections and that was intended to define the concept of "reasonable grounds" for a search. That rule, OAR 291-66-010(10), provides that "reasonable grounds" are

"[i]nformation of such creditibility [*sic*] that it would induce a reasonably prudent person to use it in the conduct of his/ her professional duties."

It follows that, in the strictest sense, the inquiry in this case should be directed to whether the information available to the probation officer met the foregoing standard. The Court of Appeals took that approach, ultimately concluding that the rule was intended to embody the "reasonable suspicion" standard presently imposed on "stops" by police officers: "[A] police officer is able to point to specific and articulable facts that give rise to a reasonable inference that a person has committed a crime." *Gulley*, 131 Or App at 246 (citing *Ehly*, 317 Or at 80).

The construction given the rule by the Court of Appeals is not unreasonable. However, we will approach the question of the substantive content of the rule by another route, *viz.*, by identifying the legislative intent in enacting the statute, ORS 137.540(2)(m) (1991). We do so, first, because there is nothing in either the rule's text or context to suggest that, in promulgating it, the Department of Corrections intended it to in any way alter or limit the authority granted to probation officers by the statute. Rather, the Department appears to be restating the statutory standard in its own words. Second, defendant never has argued that the standard in the rule is different from the statutory standard itself. Finally, the state has not claimed that the rule has any substantive meaning different from the statutory standard to which it speaks. In summary: We assume that the rule means the same thing as the statute. We therefore return to our inquiry into the meaning of the statute.

■ In applying the term, "reasonable grounds," in this case, we seek to discern the intent of the legislature in selecting that term as the legal standard. However, the term is not self-defining, and no reported Oregon case had defined it before the decision of the Court of Appeals in the present

case. We thus are left to seek legislative intent through the familiar methodology described in *PGE v. Bureau of Labor & Industries*, 317 Or 606, 859 P2d 1143 (1993). Under that methodology, we begin our search for legislative intent by examining the text and context of the statute in question. 317 Or at 610-11. If the legislature's intent is clear from that first level inquiry, we look no further. *Id.* at 611.

The pivotal textual term—"reasonable grounds"—is nowhere defined in the statutes. Neither, as we have noted, is it self-defining. We do, however, derive indications as to its meaning from text and context.

First, the operation of the statute, as described in the text, indicates that the term is intended to mean something different from and less than "probable cause"—the constitutional standard used to describe that measure of knowledge necessary to justify a search or seizure by government officers. Given the volume of litigation generated by that familiar standard, it is difficult to imagine why the legislature would choose to use a phrase that only was intended to serve as a surrogate for it. Indeed, the very fact that the legislature chose a different term than probable cause militates against a holding that the legislature nonetheless *meant* "probable cause." *See PGE*, 317 Or at 614 (holding that legislative use of different phraseology in different places in statute indicated different intent). Therefore, we infer from the text of ORS 137.540(2)(m) (1991) that the standard that it sets is *different from* that represented by the concept of "probable cause."

We also infer, this time from *context*, that the standard that the legislature intended is *less* than that represented by the concept of "probable cause" to search. The term, "reasonable grounds," appears in a legislatively authorized *condition of probation*, one of many set out in *former* ORS 137.540(2). Thus, it is a given fact that the term will be applied only to those who already have been convicted of some criminal offense. *See* ORS 137.520 *et seq* (authorizing sentencing magistrates to impose probation, prescribing certain conditions to be met by probationers, and setting procedure for revocation of probation in appropriate cases). The level of freedom from police scrutiny enjoyed by the general

public is the requirement that the police possess information that amounts to "probable cause" before being entitled constitutionally to search. *See, e.g.*, ORS 131.005(11) (defining "probable cause" to *arrest* as "a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it"); ORS 133.555 (dealing with "probable cause" to *search*); *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986) (explicating standard for "probable cause" to *search*). Because of the probationer's status, it is most probable that the legislature did not mean to extend to the probationer a *greater* level of protection from probation officer scrutiny than that which is available to those who have not been convicted. Therefore, the concept of "reasonable grounds" most probably speaks to a quantum of information *less* than that necessary to establish "probable cause."

We also know from both text and context that the legislature chose a term, "reasonable grounds," that differed from the term that traditionally has been associated with the exercise of police authority to "stop" individuals and to search persons or premises, *viz.*, "reasonable suspicion." *See, e.g.*, ORS 131.615 (authorizing "stops"—temporary detention of persons to make a reasonable inquiry concerning whether a crime has been committed—based on "reasonable suspicion," described in ORS 131.605(4) as "a belief that is reasonable under the totality of the circumstances existing at the time and place"); *Ehly*, 317 Or at 80 (explicating "reasonable suspicion" standard). Because the degree of police intrusion on privacy during a "stop" is less than that involved in a search, it seems most probable that the legislature would not have intended to permit a probation officer to request permission to search—a more intrusive process—pursuant to ORS 137.540(2)(m) (1991) under such a relatively low standard. It follows, we believe, that "reasonable grounds" refers to a quantum of information *greater* than that required to justify a "stop" of a person under ORS 131.615.

In summary, we can state from the text and context of ORS 137.540(2)(m) (1991) that its requirement of "reasonable grounds" means a quantum of information that is greater than that which would justify a "stop," but less than that required for "probable cause." That is, "reasonable

grounds" means a quantum of evidence, less than probable cause, that produces a belief in the probation officer, which belief is reasonable in the circumstances, that the probationer has violated a condition of probation and that a search will produce evidence of that violation. It is not possible further to quantify the amount of evidence that is required by resorting to text and context alone. We therefore turn to legislative history to see if any more specific statement of the quantum of evidence required can be derived from that source. *See PGE*, 317 Or at 611-12 (describing this as next step in search for legislative intent).

Unfortunately, a search of legislative history does not advance our inquiry. There is no information in the legislative history of the measure that gives us any further insight into the quantum of evidence that the legislature envisioned as satisfying the standard that it was creating.[4] The most that can be said is that the legislative history does not conflict with our tentative conclusion that the term "reasonable grounds" was intended to refer to a quantum of information somewhere between that required to justify a "stop" of an individual and that required to justify a search of a person or a place.

Under our methodology described in *PGE*, 317 Or at 612, the final level of analysis in attempting to identify legislative intent calls for this court to rely on pertinent maxims of statutory construction. The maxim that appears most pertinent is that which directs a court to construe a statute in accordance with what it believes the legislature would have done, had that body specifically addressed the issue at hand. *Ibid.* In doing so, we are guided by the considerations pertaining to probationers to which we already have adverted, as well as by one further consideration: The manifest purpose of ORS 137.540(2)(m) (1991) is to give to probation officers a tool that permits the officers to inquire, with increasing intensity, into matters that at the outset would not justify the issuance of a search warrant in a criminal case.

---

[4] ORS 137.540(2)(m) (1991) originally was enacted in Oregon Laws 1981, chapter 671, section (2)(L). In 1989, ORS 137.540 was amended, and what had been paragraph (L) was redesignated as paragraph (m). Or Laws 1989, ch 790, § 16. There was no substantive change.

■     Based on the foregoing considerations, we hold that, in order to exercise the authority granted under ORS 137.540(2)(m) (1991), a probation officer must possess information that causes the officer reasonably to believe that the probationer is violating a condition of probation and that a search of the probationer's person, residence, vehicle, or property would disclose evidence of a probation violation.[5] If a probation officer in possession of that quantum of information asks to make such a search, the ensuing search is valid under the statute. If the request is refused, treating the refusal as a violation of the special term of probation also is valid.

We recognize that, at this point, any formulation that we announce to flesh out the concept of "reasonable grounds" will, of necessity, rely on adjectives to express its quantitative dimension. We further recognize that, when used in this way, adjectives are better suited to expressing mood than mathematics.[6] Nevertheless, we are required to give substance to the legislative policy embodied in ORS 137.540(2)(m) (1991), and we have done so. We turn now to application of that policy to the facts of this case.

The probation officer in this case had "reasonable grounds" to ask permission to search. Based on his knowledge of defendant's five urinalyses and defendant's acknowledgment of a sixth incident of illegal drug use, the officer actually believed that defendant had committed repeated violations of his probation. He also knew that an informant had reported to Detective Dominy that defendant was using and distributing drugs in his home. The most likely location where defendant's ongoing drug use activity would occur was in defendant's home, and the informant's tip bolstered that likelihood. That likelihood further was bolstered by the separate tip concerning the presence of guns, which could be used to protect a "stash" of drugs, on those premises. In other words, the unidentified informant's information is not to be

---

[5] For the reasons explained above, a probation officer must also possess that level of information to exercise the authority defined by OAR 291-66-010(10).

[6] This phrase is derived from an unpublished remark made during a conference of this court by former Associate Justice Hans Linde. It seemed too *apropos* to go forever unused.

considered "alone," as defendant would have us do. Neither is it irrelevant, as the trial judge ruled. Instead, it is to be viewed as a part of the larger collection of information that the probation officer had when he decided to ask to search. Under the totality of circumstances, the probation officer's belief that a search of defendant's home would produce evidence of a parole violation was objectively reasonable. Because the probation officer had reasonable grounds to request permission to make the search, no right of defendant's was violated.

The decision of the Court of Appeals is affirmed. The order of the circuit court is reversed. The case is remanded to the circuit court for further proceedings.