Argued and submitted October 17, 2001, reversed and remanded May 29, 2002

## STATE OF OREGON,
### *Respondent,*

*v.*

## AARON DAVID WALKER,
### *Appellant.*

### 99-1270; A110462

47 P3d 65

Timothy P. Dunn argued the cause and filed the brief for appellant.

Laura S. Anderson, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Kistler and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals a judgment of conviction for delivery of a controlled substance, ORS 475.992(1)(a); possession of a controlled substance, ORS 475.992(4)(a); and two counts of furnishing alcohol to a minor, ORS 471.410(2). He assigns error to the denial of his motion to suppress evidence discovered during a stop. We reverse and remand.

The relevant facts are not in dispute. Deputy Groshong was on duty with a field trainee, Schneidecker, at approximately 7:30 p.m. in Oceanside. They saw three young men who appeared to be in their late teens walking down the road. One of the men had a brown bottle in his hand. The officers thought that the young men might be minors in possession of alcohol. They called out to the men and asked them to come over to their police car. Two of the men went to the police car, while defendant walked away. Groshong followed defendant. When Groshong caught up with defendant, defendant was standing between a steep hill and a vehicle, with a jacket at his feet. Next to the jacket lay two unopened beer bottles.

Groshong picked up the jacket, squeezed it, and felt a pipe and a grapefruit-sized "squishy" bag. Groshong asked defendant about the contents of the jacket, and defendant replied that they included a marijuana pipe and approximately an ounce and a half of marijuana. Groshong read defendant his *Miranda* rights and placed him under arrest. Groshong and defendant then got into a "tussle," resulting in Groshong spraying defendant with Capstun, a kind of pepper spray. At that point, Groshong asked defendant for permission to search the jacket, but defendant refused.

Defendant was transported to the police station, where Groshong handed him a consent card and again asked for consent to search the jacket. Defendant could not read the consent card because of the pepper spray in his eyes. After Groshong read the card to him, defendant signed it. Groshong searched the jacket and found marijuana.

At trial, defendant moved to suppress all evidence resulting from the stop. According to defendant, (1) the officers lacked reasonable suspicion to stop him; (2) Groshong lacked any justification to pick up the jacket and feel its contents; (3) Groshong's questions about the contents of the jacket were unlawful because they were not preceded by *Miranda* warnings; and (4) the consent to search the jacket after the delivery of *Miranda* warnings was not voluntary. The trial court concluded that (1) the officers had reasonable suspicion to stop defendant; (2) Groshong was entitled to examine the contents of the jacket because of reasonable officer safety concerns; (3) *Miranda* warnings were not required when Groshong examined the contents of the jacket, because defendant was not in custody or in compelling circumstances; and (4) defendant later voluntarily consented to the search of the jacket.

■　　　On appeal, defendant assigns error to the trial court's denial of his motions to suppress. At the outset, he contends that the trial court erred in concluding that there was reasonable suspicion for the stop. The state argues that there was reasonable suspicion for the stop and that, in any event, the encounter with defendant did not amount to a stop. We need not address whether there was a stop because we agree with the state that, even if there was a stop, there was reasonable suspicion to justify it.

■　　　Whether the officers had reasonable suspicion to justify the stop is a question of law. *State v. Kusaj*, 174 Or App 575, 578, 28 P3d 1182 (2001), *rev den* 333 Or 400 (2002). Reasonable suspicion requires that an officer subjectively believe that the person stopped may have committed a crime and that the subjective belief is objectively reasonable. *State v. Williams*, 178 Or App 52, 58, 35 P3d 1088 (2001). In this case, the officers saw three young men who appeared to be minors, one of whom was holding a bottle that looked like a beer bottle. When the officers called out to the young men, one of them—defendant—walked away behind a parked vehicle. There was testimony that the officers subjectively believed that the three young men may have been minors in possession. On the foregoing facts, we conclude that that subjective belief was objectively reasonable.

Defendant next argues that, even if the stop was lawful, the search of his jacket was not. According to defendant, Groshong lacked any justification to pick up the jacket and examine its contents. The state argues that the officer had reasonable concerns for his safety, which justified his search of the jacket. On that point, we agree with defendant.

Under Article I, section 9, of the Oregon Constitution, a search or seizure must be conducted either pursuant to a warrant supported by probable cause or a recognized exception to the warrant requirement. *State v. Miller*, 300 Or 203, 225, 709 P2d 225 (1985), *cert den* 475 US 1141, 106 S Ct 1793, 90 L Ed 2d 339 (1986); *State v. Gilkey/White*, 172 Or App 95, 99-100, 18 P3d 402 (2001). In *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987), the Oregon Supreme Court explained that

> "Article I, section 9, of the Oregon Constitution, does not forbid an officer to take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present."

Although it is often said that we are not uncharitably to second-guess law enforcement officers' judgments about such matters, it is as often emphasized that what the law requires is that the officers be able to articulate *specific facts* creating reasonable suspicion of an *immediate threat* of serious physical injury. *See, e.g., State v. Cocke*, 334 Or 1, 9-10, 45 P3d 109 (2002) (generalized concern for safety held insufficient).

In this case, the state fails to offer the required specific facts demonstrating an immediate threat of physical injury. When asked why he searched the jacket, Groshong explained that, before he returns property to someone, he always first checks for weapons. He also expressed concern that he had a trainee in the field and that he was not confident of his back-up. Such concerns, however, in no way suggest that defendant had a weapon, much less that he was likely to use it, or that in any other way defendant posed a threat to Groshong or anyone else. *See, e.g., State v. Hoskinson*, 320 Or 83, 87-88, 879 P2d 180 (1994) (an officer's

"normal practice" insufficient to justify officer safety search); *State v. Komas,* 170 Or App 468, 474, 13 P3d 157 (2000) (same).

On appeal, the state also notes that the stop occurred at night and that defendant did not comply with Groshong's request to approach. Again, however, that is not sufficient to create a reasonable suspicion that defendant posed an immediate threat. In *Bates,* for example, the officer stopped the defendant at night and asked the defendant to move a bag next to him into open view. When the defendant failed to comply, the officer drew his service revolver, ordered the defendant out of his automobile, and seized the bag. The state argued that the seizure of the bag was justified by the officer's concerns for his safety, given the time of night and the fact that the defendant had refused to comply with the instruction to move the bag. The court was unpersuaded, explaining that the facts articulated by the officer "fall short of creating a reasonable belief that this defendant posed an immediate threat," particularly in light of the defendant's cooperative attitude up to that point, his lack of aggressive or threatening behavior, and the absence of any apparent weapon. *Bates,* 304 Or at 527.

7.      The state argues that, in any event, the contents of the jacket inevitably would have been discovered in a subsequent jailhouse inventory of defendant's possessions. To avail itself of the inevitable discovery rule, however, the state must establish that, in fact, following normal and predictable investigatory procedures, the evidence would have been discovered. *State v. Johnson,* 177 Or App 244, 250-51, 35 P3d 1024 (2001). In this case, the state relies solely on Groshong's testimony that the jailhouse is the place where an arrestee's property normally is inventoried. But there is no testimony that, before the search of the jacket, Groshong had any intention of arresting defendant. In fact, the state has taken the position that, at that time, defendant had not even been stopped, much less arrested. Under the circumstances, the inevitable discovery rule does not apply.

The trial court therefore erred in denying defendant's motion to suppress.

Reversed and remanded.