Argued and submitted March 26, affirmed July 15, 2009

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

JESSE THIESEN REGNIER,
*Defendant-Respondent.*
056392

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

ALEX ROBERT KLUG,
*Defendant-Respondent.*
056393

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

BRADLEY GEORGE JOHNSON,
*Defendant-Respondent.*

Tillamook County Circuit Court
056396; A136690

212 P3d 1269

Tiffany Keast, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Joshua B. Crowther, Senior Deputy Public Defender, argued the cause for respondents. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Edmonds, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

In this criminal proceeding, in which defendants are charged with giving false information to a police officer, ORS 162.385, and possession of liquor by a minor (MIP), ORS 471.430, the state appeals from a pretrial order of the trial court granting defendants' motion to suppress all evidence obtained as a result of an investigation by a Tillamook County deputy sheriff in August 2005, concerning a report that minors were drinking on the beach. ORS 138.060(1)(c). We affirm.[1]

We turn next to our standard of review regarding the trial court's order. Under *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968), what circumstances actually occurred is a question of fact for the trial court to decide. If the trial court's findings are supported by the evidence, then we are bound by those findings. If the trial court does not make findings on all the material facts and there is evidence from which such facts could be decided in more than one way, we will presume that the facts were decided in a manner consistent with the trial court's ultimate findings. However, the legal import of those facts decided by the trial court is subject to our review for legal error.

In that light, we turn to the oral findings made by the trial court at the conclusion of the hearing on the motion to suppress:

"The evidence before the Court is that when the deputy— that she got a call that there was some kind of MIP party. * * *

"She arrived. She was there, Officer Swanson, other officer, was talking to a man, no name, no date of birth, learned

---

[1] This appeal comes to us in an unusual procedural posture. Defendants were found guilty of MIP in January 2007 in a trial to the court while the false-information charges under ORS 162.385 were tried to a jury. However, the trial court did not enter a written judgment convicting defendants of MIP. As to the false-information charges, the jury was unable to reach verdicts, and the trial court declared a mistrial as to those charges. Subsequently, defendants moved to suppress the evidence obtained by Deputy Sheriff Kelly, which led to the order on appeal. Apparently, the trial court intended its order of suppression to apply to both charges, and the determination of guilt to be set aside. Thus, for purposes of ORS 138.060(1)(c), we conclude the order on appeal pertains to all charges against defendants.

from the man that there was a MIP party down the beach two campfires away.

"* * * * *

"[B]ased on that information, Deputy Kelly drives down the beach and finds—goes to the second campfire, pulls to a stop.

"When she pulls to a stop, she observes the group of between 15 and 30 people. In this group are men, women, children and persons of unclear age, meaning persons who may or may not be under 21. Some apparently, are clearly adults, some are children and then there's the indeterminate age people.

"There's nothing significant or unusual about this bonfire. Nobody's behaving unusually irrationally. There's no keg visible. There's a bunch of people around a bonfire.

"When she pulls up she does see that some amount of people that are questionable age are holding cans of what appear to be alcohol, not these defendants.

"* * * * *

"And I think for the ultimate ruling by the Court, I'm just going to find that she thought they appeared to be underage. So what we're then left with is that there's a group of people around a fire. And, I guess it's clear, therefore, that upon arriving at this campfire, there are some corroborations of the citizen informant in that there are what appear to be minors drinking.

"* * * * *

"It seems like what the officer knows is that there's a party where some minors are drinking, there are adults as well, and there are children as well.

"There are these questionable age defendants who did not have cans of alcohol who, when they walk away, when * * * there's nothing significant about their appearance, there's nothing significant about the way they are walking, there's nothing significant about the way they're behaving.

"So the question is whether she has reasonable grounds. And then she shouts at them to come back, which the State has conceded is equivalent to a stop."

After defendants complied with the officer's demand to return to her location, Kelly asked for their identification. Each defendant replied that he did not have any identification. Kelly then asked for their names, dates of birth, addresses, and telephone numbers. Based on that information, Kelly attempted to verify their identities, which she was unable to do. However, at a later point in time during the encounter, defendants furnished Kelly with their correct identification information.

After hearing arguments from counsel, the trial court ruled, "I think there has to be some indication that these defendants have been drinking, and I don't think that there is enough for reasonable grounds, and I'm going to grant the motion."

On appeal, the state does not contend that the trial court's findings are not supported by the evidence. Instead, it argues:

"The trial court erred in concluding that 'reasonable grounds to believe' a person has committed a non-violation requires a higher level of certainty than that required by the 'reasonable suspicion' standard governing an officer's authority to stop a person suspected of a crime. * * *

"Whether or not 'reasonable grounds to believe' requires a higher degree of certainty than 'reasonable suspicion,' the trial court also erred in concluding that the officer was not justified in stopping defendants to investigate her suspicion that they had committed a violation of the minor-in-possession statute. The officer had received a report that minors were drinking alcohol at a particular beach bonfire; she responded to that bonfire and saw a group of people; some of the people at the bonfire appeared to be underage, and were holding alcoholic beverages; defendants were at the party; defendants appeared underage; and defendants walked away from the party when she arrived in her marked patrol vehicle. Under those circumstances, the officer was justified in stopping defendants to investigate."

The state's initial argument concerns the proper interpretation of the words "reasonable grounds" in ORS 153.039(2). ORS 153.039(2) provides, in relevant part, that "[a]n enforcement officer may stop and detain any person if

the officer has reasonable grounds to believe that the person has committed a violation." The trial court ruled that the words "reasonable grounds" in the statute impose a different standard than the "reasonable suspicion" of criminal activity standard in ORS 131.615(1), relying on the reasoning in *State v. Gulley*, 324 Or 57, 921 P2d 396 (1996).[2] In *Gulley*, the defendant moved to suppress evidence seized during the search of his residence pursuant to a condition of his probation. ORS 137.540(2)(m) (1991), *amended by* Or Laws 1993, ch 680, § 16, required that a probationer "submit person, residence, vehicle and property to search by a probation officer having reasonable grounds to believe such search will disclose evidence of a probation violation." For purposes of that statute, the court held that " 'reasonable grounds' refers to a quantum of information greater than that required to justify the stop of a person under ORS 131.615." *Gulley*, 324 Or at 65.

According to the state, the words "reasonable grounds" in ORS 153.039(2) were intended by the legislature to have the same meaning as the words "reasonably suspects" as used in ORS 131.615 and as defined in ORS 131.605(5). ORS 131.605(5) provides that, as used in ORS 136.605 to 136.625, unless the context requires otherwise,

" '[r]easonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts as authorized in ORS 131.605 to 131.625."

For purposes of ORS 131.615(1), the word "crime" has the meaning provided for that term in ORS 161.515. ORS 131.605(1). ORS 161.515 provides that a crime is an offense for which a sentence of imprisonment is authorized and is either a felony or a misdemeanor. ORS 471.430(4)(a) provides that a person who violates ORS 471.430(1) commits a Class B violation. Any statute creating a Class B violation may impose a fine of up to $360 and other penalties but may not impose a term of imprisonment. ORS 153.018(1), (2)(b).

---

[2] ORS 131.615(1) provides that "[a] peace officer who reasonably suspects that a person has committed or is about to commit a crime may stop the person and * * * make a reasonable inquiry."

In effect, the state's argument asks us to import the definition of "reasonably suspects" in ORS 131.605(5) into ORS 153.039(1). However, even if we give the state the benefit of its proposed statutory interpretation, we need not reach the issue of whether the trial court correctly interpreted ORS 153.039(1) if Kelly did not have a reasonable suspicion (a standard requiring a quantum of information less than required for "reasonable ground," under *Gulley*) that defendants were in possession of alcoholic beverages at the time that she restrained their liberty of movement. We therefore turn initially to that issue.

■ ORS 471.430(1) provides, in relevant part, that, "[e]xcept when such minor is in a private residence accompanied by the parent or guardian of the minor and with such parent's or guardian's consent, a person under the age of 21 years may not have personal possession of alcoholic beverages." ORS 471.430(2) provides that, "[f]or the purposes of this section, personal possession of alcoholic beverages includes the acceptance or consumption of a bottle of such beverages, or any portion thereof or a drink of such beverages." Whether Kelly had an objectively reasonable suspicion that defendants were in violation of ORS 471.430(1) under the state's argument requires a focus on the words "personal" and "possession" in the statute.

The word "personal" was added to the statute in 1979. Or Laws 1979, ch 313, § 8. The word "personal" is not defined by statute in this context, and, thus, we turn to the common ordinary meaning of the word as expressing the legislature's intention. The word "personal" refers to "something of which the relation to a human individual is a basic attribute: as * * * personal property[.]" *Webster's Third New Int'l Dictionary* 1686 (unabridged ed 2002). The word "personal" is used in ORS 471.430(1) as an adjective to modify the word "possession," and thus connotes "**2.** Of or constituting personal property ‹personal belongings›[.]" *Black's Law Dictionary* 1179 (8th ed 2004) (boldface in original).

The word "possession" in ORS 471.430(1) is a derivative of the word "possess," which is defined in ORS

161.015(9) for purposes of the Oregon Criminal Code as "to have physical possession or otherwise to exercise dominion or control over property." The statute codifies the common-law concepts of the meaning of the word "possession" to include physical possession and constructive possession—where there is not physical possession but the possessor exercises dominion or control over the object. *State v. Casey*, 346 Or 54, 59, 203 P3d 202 (2009). Although the definition of the word "possess" in ORS 161.015(9) does not apply to ORS 471.430(1), the definition is some evidence of what the legislature intended when it used the words "personal possession" in ORS 471.430(1), particularly in light of the legislature's amendment of the statute in 1979.

Also, the word "possession" in ORS 471.430(1) has been the subject of previous judicial interpretations by the Oregon Supreme Court in related statutes. In *State v. Williams*, 117 Or 238, 243 P 563 (1926), the defendant was indicted for unlawfully having intoxicating liquor in his possession. The parties stipulated that, at the invitation of a friend who was the possessor of a bottle of intoxicating liquor, the defendant took a drink from the bottle and immediately returned it to his friend. Under the circumstances, the court held that there were no facts "from which the jury could have drawn a reasonable inference that defendant was exercising some control, dominion or ownership over the intoxicating liquor" so as to constitute "possession" of the bottle. *Id.* at 243. Similarly, in *State v. Gordineer*, 229 Or 105, 111, 366 P2d 161 (1961), the court explained that the concept of "possession" as used in ORS 471.430 (1961), *amended by* Or Laws 1963, ch 243, § 2, includes the requirement of an "intent * * * to possess full control over the liquor with the right to enjoy its consumption to the exclusion of others." Both of those cases had been decided before the legislature amended ORS 471.430(1) in 1979 to add the word "personal" to the statute. Or Laws 1979, ch 313, § 8.[3]

---

[3] *See State v. Fries*, 344 Or 541, 549, 185 P3d 453 (2008) (holding that the legislature, in enacting ORS 161.015(9), chose a narrower definition of "possession"—physical control—than it used in the statute at issue in *Gordineer*, ORS 471.430 (1961)).

With those understandings of what the legislature likely had in mind when it used the words "personal" and "possession" in ORS 471.430, we turn to the issue of whether Kelly had an objectively reasonable suspicion that defendants were in physical possession of alcoholic beverages at the time she contacted them. When Kelly arrived, she observed that defendants were part of a group of people, some of whom appeared to be minors and in possession of alcoholic beverages. However, Kelly did not observe defendants to be in actual possession of containers of alcoholic beverages when she arrived or at any time after her arrival. Rather, the trial court expressly found that defendants were not among the individuals "holding cans of what appear to be alcohol." Indeed, later in making its ruling, the trial court summarized:

> "There are these questionable age defendants who did not have cans of alcohol, who, when they walk away, when * * * there's nothing significant about their appearance, there's nothing significant about the way they are walking, there's nothing significant about the way they're behaving."

Based on the trial court's findings, which are supported by the record, we conclude that Kelly did not have an objectively reasonable suspicion that defendants possessed alcoholic beverages as their personal belongings or property at the time that she arrived at the bonfire.

We turn next to the issue of whether Kelly had an objectively reasonable suspicion that defendants were in constructive possession of alcoholic beverages physically possessed by other members of the group. The trial court found that there was no "visible" keg or similar container providing a common source of alcoholic beverages for the group of people gathered around the bonfire. The only evidence is that some members of the group were observed holding or drinking from cans in their physical possession while standing around the bonfire.

In general, individualized suspicion that a particular individual is involved in criminal conduct may objectively exist when the circumstances demonstrate that an individual associates with someone who has committed an offense and

is also involved with the other person in the criminal activity. "It is reasonable, in some circumstances, to suspect that one who associates with someone who has committed a crime is also involved in criminal activity." *State v. Manss*, 99 Or App 498, 501, 783 P2d 24 (1989). However, in other circumstances, there must be factors beyond the mere association of the defendant with another person to support a suspicion the defendant is reasonably connected with the illegal activity. *Id.* at 502; *see also State v. Zumbrum*, 221 Or App 362, 369, 189 P3d 1235 (2008) ("The mere fact that a person associates with another person involved with methamphetamine does not support a reasonable suspicion that that person is also involved with methamphetamine.").

The contrast between the circumstances in *Manss* and in *State v. Walker*, 181 Or App 548, 47 P3d 65 (2002), illustrates the importance in discerning between individual and group illegal activity. In *Manss*, the police received a report that a man had approached three teenage boys and offered to sell drugs to them. After the boys had refused the offer, the man crossed the street and joined a group composed of two other men, the defendant, and a dog. Several minutes later, an officer spotted the group and detained all of them. We held that there was nothing in those circumstances to connect the defendant with the individual attempt to sell drugs except for her subsequent association with the person who had made the offer to the boys, and, consequently, the detention of the defendant was deemed illegal. 99 Or App at 502.

In *Walker*, in contrast, officers saw three young men who appeared to be in their late teens walking together down a road. One of the individuals had what appeared to be a beer bottle in his possession. When the officers called out to the young men and asked them to come over to their police car, one of them, the defendant, walked away behind a parked car. One of the officers followed the defendant, and, when he caught up with him, he found the defendant standing with a jacket at his feet. Next to the jacket lay two unopened beer bottles. Based on those facts, we concluded that the officers' subjective belief that that the young men were minors in possession was objectively reasonable because that fact could be

reasonably inferred from the fact that the young men were together at the time of the illegal activity. 181 Or App at 551.

This case presents different and more complicated circumstances than existed in *Walker*. According to the trial court's findings, the group around the bonfire of which defendants were a part consisted of between 15 and 30 people, including adults, children, and individuals "who may or may not be under 21." As Kelly arrived, five young men, including defendants, walked away from the group around the bonfire toward the ocean. Kelly gave the following testimony about those events:

"[DEFENDANT'S ATTORNEY:]  And where did you see the alcohol?

"[KELLY:]  There were several people holding beer cans.

"[DEFENDANT'S ATTORNEY:]  And what ages did they appear to be?

"[KELLY:]  Some of them appeared younger, some of them appeared older.

"[DEFENDANT'S ATTORNEY:]  So you don't know?

"[KELLY:]  No, I don't know what their ages were.

"[DEFENDANT'S ATTORNEY:]  And you didn't make contact with those people?

"[KELLY:]  Deputy Swanson did.

"[DEFENDANT'S ATTORNEY:]  Okay, I'm talking about of the 15 or 20—or the 15 to 30 that were there?

"[KELLY:]  That's correct. Deputy Swanson made the rounds around the campfire while I was taking to the five individuals."

In our view, the above circumstances do not support an individualized suspicion that defendants were in personal constructive possession of the alcoholic beverages that were in the possession of others in the group. It is evident that Kelly detained defendants on the basis of the report that an MIP beer party was occurring around the bonfire and the fact that defendants walked away from the bonfire when she approached. However, the circumstances that she observed when she approached the group belied the report that the group was engaged in the consumption of alcoholic beverages

as part of a group activity. Rather, the only reasonable implication of Kelly's observations is that the group was made up of adults, young people, and children; that some members of the group were engaged in the consumption of alcoholic beverages; and that some individuals in the group consuming alcoholic beverages may have been underage and thus were engaged in conduct that violated ORS 471.430(1). In other words, absent from the circumstances observed by Kelly were indicia of a group activity of drinking alcoholic beverages. Importantly, Kelly made no observations that connected defendants with any of the underage members of the group observed to be consuming alcoholic beverages, except for their and defendants' presence in the same group around the bonfire.[4] But that presence, in and of itself, is not enough under the law to give rise to a reasonable inference that defendants had participated individually in the furnishing or consumption of the alcoholic beverages observed by Kelly or were otherwise exercising dominion or control over the containers that were in the physical possession of the other underage individuals in the group.

In summary, we believe that the legislature's intent regarding ORS 471.430(1) is clear that individualized suspicion of personal possession of alcoholic beverages is required before defendants could be lawfully detained. In order for Kelly to have lawfully detained defendants, an objectively reasonable suspicion based on circumstances that connected them to the underage persons in the group who were drinking alcoholic beverages was necessary. It is correct that, in the abstract, under some circumstances, a reasonable suspicion of individualized participation could arise from a group activity that involved the violation of ORS 471.430(1). However, those circumstances do not exist in this case for the reasons explained above. Thus, even if we give the state the benefit of its proposed statutory interpretation, Kelly's subjective suspicion that defendants were in violation of the statute was not supported by objective indicia that would have authorized her to interfere with their freedom of movement at the time they walked away from the bonfire. Accordingly,

---

[4] In its brief on appeal, the state explains, "The state does not contend that defendants' walking away when Deputy Kelly arrived would, on its own, reasonably support a suspicion that defendants had committed a violation or a crime."

the trial court did not err when it granted defendants' motion to suppress the evidence that is derivative of Kelly's detention of defendants.

Affirmed.