Argued and submitted November 19, 2015, Portland Community College, Cascade Campus, Portland, vacated and remanded May 11, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RICKY LEE PARNELL,
*Defendant-Appellant.*

Klamath County Circuit Court
1201316CR; A156530

373 P3d 1252

Sarah Laidlaw, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attoney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

## GARRETT, J.

Defendant challenges a trial court's denial of his motion to suppress, after which he entered a conditional guilty plea for one count each of unlawful manufacture of marijuana, ORS 475.856; unlawful delivery of marijuana, ORS 475.860; and unlawful possession of marijuana, ORS 475.864(2). He assigns error to the trial court's denial of his motion on the ground that his consents to enter and search his home were invalidated by a preceding illegal trespass by police into his backyard. Although the trial court found that police had trespassed, it also found that defendant's initial consent to allow police to *enter* his home occurred before the trespass and, therefore, was not tainted by that illegality. However, the trial court did not make a ruling or any factual findings as to whether defendant's subsequent consent to allow police to *search* his home was affected by the police trespass. Accordingly, we vacate and remand for the trial court to address that issue.

We review a trial court's denial of a motion to suppress for legal error. *State v. Farrar*, 252 Or App 256, 257, 287 P3d 1124 (2012). In reviewing the record, "[i]f the trial court's findings are supported by the evidence, then we are bound by those findings." *State v. Regnier*, 229 Or App 525, 527, 212 P3d 1269 (2009) (citing *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968)). If the trial court does not make findings on all material facts, and there is evidence from which such facts could be decided in more than one way, "we will presume that the facts were decided in a manner consistent with the trial court's ultimate findings." *Id.* Consistently with that standard, we draw the following facts from the testimony presented at the suppression hearing, *see, e.g., State v. Standish*, 197 Or App 96, 98, 104 P3d 624 (2005) (so doing), and from the trial court's findings of fact.

United States Postal Inspector Helton notified the Oregon State Police (OSP) that a drug-sniffing dog had "alerted" to a package addressed to defendant's home. Three OSP detectives and Helton went to the address on the package and found two homes at that location. Unable to determine for which home the package was intended, Detectives Boice and Sitowski went to knock on the door of the first

house, while Detective Mogle and Helton went to do the same at the second.

As he approached the second home, Mogle could see defendant through a front window. Mogle knocked, and defendant answered the door. Mogle and Helton identified themselves, and Helton asked defendant if he knew anything about the package. Mogle testified that he "waved at [Boice and Sitowski] to come over" from the first residence "at the same time" as he was asking defendant about the package.

Rather than come to the front door, Boice and Sitowski "went towards the back" of the house and, ultimately, into defendant's backyard, which was unfenced, to "watch" the "rear of the residence." The state introduced an aerial photograph to demonstrate that there was some distance between the front door of the first residence and defendant's backyard, although the precise distance was not described.

Defendant told Mogle and Helton that the package was not his, that he did not recognize the sender, and that he was not expecting to receive anything in the mail. Without further prompting, defendant then told Mogle that he was a licensed medical marijuana grower in Oregon and that he had a grow operation inside the home. Mogle testified that he "asked to see it," and defendant "invited" Mogle and Helton inside to see the grow operation.

After Mogle and Helton entered defendant's house, Mogle testified that, from where he was standing, he could see marijuana plants growing "in the backyard through the window." Mogle also observed marijuana buds in a plastic container. Defendant then showed him a "grow room." Defendant allowed Helton to open the package, and, inside, Helton found a hollowed-out book containing $25,000. Defendant "lowered his head" upon seeing the money. Mogle read defendant his *Miranda* rights. Defendant then told Mogle that the money was a payment for a 10-pound shipment of marijuana that he had sent to a buyer in Virginia. Mogle then requested defendant's consent "to search anywhere in the residence[,]" and defendant consented.

Mogle went to the front door to call Boice and Sitowski into defendant's home for a search of the rest of the premises. Mogle testified that Boice and Sitowski told him that, around the back of the house, they had seen marijuana plants growing out on a patio. During the search of the home, defendant made more incriminating statements to police, and police found more marijuana plants upstairs.

Before the trial court, defendant moved, in a written motion, to suppress "all evidence and any statements obtained" by police during the "entry into and search of" his home on the ground that a preceding police trespass "render[ed] any subsequent consent invalid."

At the hearing on defendant's motion, the trial court noted that it was "pretty clear [defendant] gave the officers permission to search for marijuana." Defendant replied that that consent had been given only after he had seen Boice and Sitowski trespass and was, therefore, tainted by that illegality. Mogle also testified that, had defendant not given consent to enter the home, he would have detained defendant and applied for a warrant.

The trial court questioned the connection between the trespass and defendant's consent and whether the "whole thing would have happened just the way it did" even if the trespass had not occurred. Defendant responded that the trespass occurred "before he invited [Mogle and Helton] in." The trial court, however, concluded that it did not "believe [defendant] over Mr. Mogle who said that he saw the marijuana" in defendant's home before he talked with Boice and Sitowski about any marijuana they had seen while trespassing, nor did it believe that any trespass "contribute[d] to the discovery of the marijuana." At the close of evidence, defendant argued that, "[a]ny subsequent entry into and search of [his] house *** violated Article [I], Section 9, [of the Oregon Constitution], because even though [he] consented to the entry, *** [his] consent was invalid because it was a product of illegal police conduct."

Ultimately, the trial court denied defendant's motion:

"[Y]our Motion to Suppress is denied. *** Mogle went to the front, he had a, it's okay for him to go to the front, he

had a conversation with [you] [you] confided in him and told him all about it, and it's totally [a] consent search. And it, he had a right to be there. So, denied."

In a subsequent order denying defendant's motion, the court presented, in relevant part, its findings of fact:

"Detective Mogle testified that he and Inspector Helton engaged the defendant in a conversation at the same time that Detective Mogle motioned Detectives Sitowski and Boice over. Detective Mogle testified that Detectives Sitowski and Boice took up positions to secure the back of the house as the defendant invited Mogle and Helton inside.

"Detective Mogle asked the defendant about the package. Defendant denied expecting a package and agreed to allow Mogle and Helton to open the package. Defendant told Mogle and Helton that he was a * * * grower under the Oregon Medical Marijuana Act (OMMA). Helton asked the defendant to show Mogle and Helton the grow. The defendant agreed to do so and led Mogle and Helton inside the residence. Mogle called to Detectives Sitowski and Boice, and indicated that he could see marijuana.

"After showing Mogle and Helton a spot where the defendant was growing marijuana, * * * Helton opened the package. Inside the package was a book * * * containing $25,000.00 in U.S. currency. Upon seeing the money the defendant lowered his head.

"Mogle advised the defendant of his rights pursuant to *Miranda*. The defendant admitted that he sold marijuana and that the cash was payment.

"Detective Sitowski testified that he did not remember entering the defendant's yard after Mogle summoned him over."

In its "Findings of Law," the trial court determined "that there was trespass by the detectives" and that "Detective Mogle [had] observed evidence of the manufacture of marijuana before any possible improper act by Detectives Sitowski and Boice."

After defendant's motion was denied, he entered a conditional guilty plea to one count each of unlawful manufacture of marijuana, ORS 475.856; unlawful delivery of

marijuana, ORS 475.860; and unlawful possession of marijuana, ORS 475.864(2).

As an initial matter, we address several questions regarding the preservation of defendant's appellate arguments. First, defendant argues on appeal that he was "seized" when police trespassed into his backyard. Defendant acknowledged at oral argument that he did not raise that issue before the trial court, nor does he seek plain error review. Therefore, we do not consider it. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380, 823 P2d 956 (1991) (explaining that arguments not preserved in the trial court will not be considered on appeal); ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court[.]").

Second, defendant contends that that trespass invalidated his consent to open the package, an argument we conclude is likewise unpreserved. A written motion to suppress "serves dual functions[:] [i]t frames the issues that the court will be required to decide, and it notifies the state of the contentions that it must be prepared to address at the hearing on the motion." *State v. Sweet*, 122 Or App 525, 529, 858 P2d 477 (1993). Because it is the defendant in a criminal case who is "the proponent of the motion to suppress, 'it is the defendant who bears the responsibility of framing the issues contemplated by the motion.'" *State v. Smith*, 188 Or App 573, 578, 72 P3d 657 (2003) (quoting *Sweet*, 122 Or App at 529).

Exactly what suffices to preserve a particular argument "is not something that can be explained by a neat verbal formula." *State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011). In *Peeples v. Lampert*, the Supreme Court explained the important policy goals behind preservation rules:

"Preservation gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal. Preservation also ensures fairness to an opposing party, by permitting the opposing party to respond to a contention and by otherwise not taking the opposing party by surprise. Finally, preservation fosters full development of the record, which aids the

trial court in making a decision and the appellate court in reviewing it."

345 Or 209, 219-20, 191 P3d 637 (2008) (citations omitted).

In this case, defendant argued, in his written motion to suppress, that the officers' trespass rendered "any subsequent consent invalid." At the suppression hearing, defendant argued that "[a]ny subsequent entry into and search of [his] house * * * violated Article [I], Section 9, [of the Oregon Constitution], because even though [he] consented to the entry, * * * [his] consent was invalid because it was a product of illegal police conduct." The discussion with the trial court at the motion hearing focused exclusively on the validity of his consents to allow officers into his home and to subsequently search his home. At no time did defendant mention the package.

It is true that defendant's written motion referred to "any subsequent consent"—a formulation that could theoretically be understood to include the consent to open the package. And, if a party makes an argument in a written motion, he or she need not necessarily reiterate that precise argument at the hearing in order for the issue to be preserved. *See Walker*, 350 Or at 550 (explaining that, "[t]his court has never required that each and every argument that has been asserted in writing must be repeated orally in court in order for the argument to be preserved" and concluding that it was not "dispositive" that a defendant did not "reiterate" an argument made in a written motion again at a hearing on that motion). Under these circumstances, however, we do not believe that defendant sufficiently alerted either the state or the trial court to his challenge regarding the package.

Defendant's broad written challenge to "any subsequent consent" was followed, at the hearing, by argument that focused entirely on the entry into and search of the home. The search of the package raises distinct issues from those relating to the house search—issues that likely would have been developed further if defendant had made clear that he was also challenging the validity of his consent to search the package. That is so because, among other reasons, defendant apparently disclaimed knowledge or ownership of

the package when Mogle and Helton first showed it to him. Had defendant argued to the trial court that his "consent" to open that package was invalid, the prosecution would have had the opportunity to further explore issues surrounding defendant's connection to the package—including, perhaps, whether defendant's consent was even required to open an item that he denied belonged to him. Accordingly, we conclude that a fair reading of the record shows that defendant did not put the state or the trial court on notice that he believed that the consent to open the package was invalid. For those reasons, we decline to consider that unpreserved argument.

Turning to defendant's preserved arguments, he contends that, under Article I, section 9, his consents to enter and subsequently search his home were invalid because they were the products of the unlawful police trespass.[1] That is so, he argues, because the consents "came during and immediately after the officers' misconduct in entering his backyard." Thus, all evidence, including defendant's inculpatory statements, that was born of "any subsequent consent" must be suppressed.

To begin with, defendant's argument regarding the invalidity of his consent to enter his home is premised on the assumption that his consent came after (and was thus tainted by) defendant's observation of Boice and Sitowski trespassing in his backyard. The trial court found as fact that "Sitowski and Boice took up positions to secure the back of the house *as the defendant invited Mogle and Helton inside*" and that "Mogle observed evidence of the manufacture of marijuana *before any possible improper act by* * * *

---

[1] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

Defendant also cited the Fourth Amendment to the United States Constitution in his motion to suppress before the trial court but did not develop a federal constitutional argument at the hearing does not pursue that argument on appeal. Therefore, we decline to address defendant's unpreserved federal constitutional arguments. *See State v. Amaya*, 336 Or 616, 634 n 6, 89 P3d 1163 (2004) (declining to address undeveloped federal constitutional arguments).

*Sitowksi and Boice.*" We are bound by the trial court's findings if they are supported by constitutionally sufficient evidence in the record. *Regnier,* 229 Or App at 527. In reviewing the record, if "the trial court does not make findings on all the material facts and there is evidence from which such facts could be decided in more than one way, we will presume that the facts were decided in a manner consistent with the trial court's ultimate findings." *Id.*

The record reflects that Mogle waved Boice and Sitowski over from the neighboring residence "at the same time" as he was having a conversation with defendant regarding the package. Defendant then invited Mogle and Helton inside to show them his marijuana grow operation. Although the specific distance between the two residences was not identified, a map introduced at the hearing demonstrated that Boice and Sitowski would have had to walk more than just a few steps to reach defendant's backyard from where they were standing at the neighboring residence's front door. The trial court did not make a specific finding as to how long it would have taken Boice and Sitowksi to reach defendant's backyard, nor did it make a finding as to the officers' exact locations when defendant gave consent to enter his home. The court did determine, however, that Mogle had already seen marijuana in defendant's home *before* the trespass occurred. Thus, we infer that the trial court made implicit findings of fact consistent with that determination—that is, that defendant had invited Mogle into his home before Boice and Sitowski had finished walking from the other home into defendant's backyard. Because evidence in the record supports that finding, we are bound by it.

The import of that factual determination is that defendant's consent to enter his home was given before any illegal trespass by police. Because no police illegality preceded defendant's consent to allow Mogle and Helton to enter his home, defendant's argument—that his consent was tainted by police illegality—fails. That necessarily means that any evidence that officers observed in plain view[2] after defendant consented to their entry but before

---

[2] Absent a warrant or an exception to the warrant requirement, an officer's observations inside a defendant's home—a private space—is a search for the

they conducted the additional consent searches of the package and the house, as well as evidence of any statements that defendant made during that time period, is admissible, and the trial court did not err in denying defendant's motion to suppress that evidence.[3]

We are left to consider what effect, if any, the trespass by Boice and Sitowski had on defendant's later consent to a search of his home, beyond the areas that were in plain view to Mogle and Helton upon their initial entry into his home. Here, again, we have a close question as to preservation. Defendant sought to suppress all evidence found as a result of the entry into and search of his home, based on his factual theory that the police trespass occurred before defendant consented to the entry and search. Defendant did not expressly make the alternative argument that, for example, even if the *initial* entry preceded the trespass and was therefore not tainted by it, the *later* consent to search the remainder of the home came after the trespass and was invalid. The transcript of the hearing, however, suggests that defendant attempted to focus the trial court's attention on the distinct issues of "entry" and "search." The trial court appeared to regard the timing of the trespass relative to the initial entry as dispositive of the entire motion, and it is not clear that defendant was given an adequate opportunity to pursue a theory that the subsequent consent to search the home was invalid *even if* the initial entry was the result of a valid consent. We conclude that defendant did enough to preserve that argument for review. *Peeples*, 345 Or at 220 (noting that, because the rules of preservation are intended to be "pragmatic as well as prudential[,] [w]hat is required of a party to adequately present a contention to the trial court can vary depending on the nature of the claim or argument; the touchstone in that regard, ultimately, is procedural fairness to the parties and to the trial court").

---

purposes of Article I, section 9. *See, e.g., State v. Sanchez*, 273 Or App 778, 787, 359 P3d 563 (2015) (explaining that a "defendant's privacy in [his or] her own home, [is] a setting in which the protections of Article I, section 9, are at their highest"). A defendant's consent to search is a well-recognized exception to the warrant requirement. *State v. Lowell*, 275 Or App 365, 374, 364 P3d 34 (2015).

[3] Defendant's only theory as to why evidence of his statements should be suppressed is that those statements are derivative evidence of the searches that defendant contends were conducted without his valid consent.

On the merits, although defendant's motion sought to suppress "all evidence and any statements" obtained as a result of "any subsequent consent" following the trespass, the record reveals that the trial court ruled only on defendant's argument regarding his *first* consent—the consent to enter his home. That is, the trial court concluded only that the police illegality came sometime after Mogle had been invited inside and had observed marijuana from where he was standing. And, although the trial court made an express finding about the timing of the trespass relative to the consent to *enter* the home, no such finding was made about the timing of the trespass relative to the consent to search the rest of defendant's home. Thus, evidently, the trial court did not consider when the trespass occurred relative to defendant's subsequent consent, nor did it consider whether the trespass affected defendant's decision to provide that consent. That leaves this court, on review, without any record regarding whether the trespass preceded defendant's consent to search his home, and, if it did, what bearing the trespass had on the later consent, which yielded further incriminating evidence.[4]

Moreover, because the trial court did not separately consider or rule on the validity of the subsequent consent to search the home, we "cannot presume that [the trial court] made implicit findings" consistent with its ruling. *See State v. Olinger*, 240 Or App 215, 224 n 7, 246 P3d 20 (2010) (vacating trial court's judgment and remanding for further proceedings after concluding that the trial court did not rule or make findings as to whether a defendant's decision to consent to search was significantly affected by a preceding unlawful search of his car) (citing *Ball*, 250 Or at 487)); *see State v. Jackson*, 296 Or 430, 439-40, 677 P2d 21 (1984) (where the Supreme Court could not "tell from the trial judge's findings" which of the parties' versions of events

---

[4] Because defendant entered a conditional guilty plea under ORS 135.335(3), we do not consider whether the additional evidence obtained was harmless because to do so would defeat defendant's statutory right. *See State v. Dinsmore*, 182 Or App 505, 519, 49 P3d 830 (2002) (explaining that "[e]mploying a harmless error analysis would defeat [defendant's] statutory right [under ORS 135.335(3)]. Defendant may, on remand, decide that [he] wishes to withdraw [his] plea and go to trial, or [he] may choose, in light of [his] limited success on appeal, not to withdraw it. The legislature, however, has left that choice to defendant.").

had occurred, the court could not conclude "one way or the other" whether a police officer's observations made it immediately apparent that a violation of the law had occurred, and the case was remanded for further factfinding).

Here, without a record establishing whether the police trespass occurred *prior* to defendant's consent to search his home, we cannot evaluate the parties' arguments regarding the effects, if any, of a preceding trespass on the validity of those consents. Therefore, we must remand to the trial court to make those requisite factual findings.

Vacated and remanded.